[No. B221102. Second Dist., Div. Eight. Jan. 27, 2011.]

MICHAEL NEILY, Plaintiff and Appellant, v.
MANHATTAN BEACH UNIFIED SCHOOL DISTRICT, Defendant and
Respondent.

COUNSEL

Daniel M. Graham for Plaintiff and Appellant.

Gibeaut, Mahan & Briscoe, Gary R. Gibeaut and John W. Allen for Defendant and Respondent.

OPINION

**BIGELOW, P. J.**—A former school district employee filed a petition for writ of traditional mandate (Code Civ. Proc., § 1085) to compel the district to reinstate him as a high school baseball coach. The primary issue in this case is whether the district had a mandatory duty under the Education Code to classify the petitioner as a "probationary" employee and not, as it did, as a "temporary" employee. The issue interests the parties because a "probationary" employee is afforded more employment protections under the code than is a "temporary" employee. The trial court ruled that the district had properly classified the petitioner as a temporary employee, and denied his petition. We affirm.

## FACTS

In January 2002, the Manhattan Beach Unified School District (the District) hired Michael Neily, a "certificated" teacher, as the varsity baseball coach at Mira Costa High School (MCHS). Beginning in January 2003, the District employed Neily as a full-time teacher in addition to his duties as MCHS's baseball coach. In June 2004, the District relieved Neily of his duties as a full-time teacher, but continued his employment as the baseball coach at MCHS. On June 15, 2009, MCHS's principal, Julie Ruisinger, advised Neily "of an intent to terminate his services" as the school's baseball coach.

On June 17 and 19, 2009, Neily submitted letters to the District indicating that the correspondences should be considered the initiation of a "grievance" against the District. On June 22, 2009, the District's deputy superintendent in charge of human resources, Janet Schwabe, informed Neily by letter that he was not permitted to file a grievance because he was not a member of the Manhattan Beach Unified Teachers Association. In the same letter, the District further stated that Neily had been employed as a " 'walk on coach,' " and as such, the District considered him to have been a " 'temporary athletic

team coach' " within the meaning of California Code of Regulations, title 5, section 5590, subdivision (a). The District advised Neily that "[t]emporary employees—including coaches" were employed by the District on a "year-to-year basis," and that they "serve[d] at the will of the principal and district." The District's letter closed by advising Neily that his "services to serve [*sic*] as the Mira Costa High School varsity boys baseball coach [were] not required for the 2009–2010 school year."

On August 10, 2009, Neily filed a verified petition for writ of traditional mandate. (Code Civ. Proc., § 1085.) Neily's petition alleged that the District had unlawfully classified him as a temporary employee, and that the District had a mandatory duty under the Education Code to classify him as either a probationary or substitute employee. Neily further alleged that, regardless of classification, the school year ended on June 18, 2009, and that the District did not notify him of termination until after June 18, 2009, meaning the notice of termination had been untimely under the Education Code.

On August 11, 2009, Neily filed a motion for judgment on his petition. Neily's evidence in support of his claims consisted entirely of his references to his own verified petition and the supporting exhibits attached to his petition, which established the facts summarized above. On September 8, 2009, the District filed its opposition to Neily's petition and motion. The District's evidence in opposition to Neily's petition consisted of a declaration from deputy superintendent Schwabe. Putting aside her statements of law and legal conclusions, Schwabe's declaration otherwise established the following facts: "Neily was released from his position as a full-time certificated employee of the District in June 2004. Thereafter, he became a . . . baseball coach only . . . . [¶] . . . [¶] Between June 2004 and June 2009, . . . Neily served as a . . . baseball coach only."[1]

At trial on September 22, 2009, the trial court denied Neily's petition, ruling that a baseball coach is classified as a temporary employee under Education Code section 44919, subdivision (b), and that, as a temporary employee, Neily could be given notice of termination "at any time before the end of the school year." (Citing *Kavanaugh v. West Sonoma County Union High School Dist.* (2003) 29 Cal.4th 911, 918 [129 Cal.Rptr.2d 811, 62 P.3d 54] (*Kavanaugh*).) The court then cited Education Code section 37200, which provides that the school year ends on the last day of June. It noted that Neily

---

[1] Schwabe's declaration referred to Neily as a "walk-on" coach. No provision in any section of the Education Code cited to us in the parties' briefs refers to "walk-on" employees; we consider the term to be colloquial, without any legal significance, and, hence, ignore the term.

admitted he had been given notice of termination prior to June 30, 2009, all of which meant that notice of termination was timely.

On October 23, 2009, the trial court entered judgment denying Neily's petition for writ of traditional mandate.

Neily filed a timely notice of appeal.

## DISCUSSION

### I. *Probationary or Temporary Employee Status*

Neily contends the judgment must be reversed because it is predicated on the trial court's erroneous ruling that he was not a "probationary" employee. We disagree.

#### A. *The Standard of Review; the Rules of Statutory Interpretation*

■ Because Neily's appeal tasks us with the construction of statutes in the context of undisputed facts, we apply a de novo standard of review. (*Shapiro v. Board of Directors* (2005) 134 Cal.App.4th 170, 178 [35 Cal.Rptr.3d 826].) The overriding principle governing the interpretation of a statute is to effectuate the Legislature's intent, which is determined as far as possible by examining the language of the statute, read as a whole. (*California Teachers Assn. v. Governing Bd. of Golden Valley Unified School Dist.* (2002) 98 Cal.App.4th 369, 375 [119 Cal.Rptr.2d 642].) Where the words of a statute are free from ambiguity, we look no further to ascertain the meaning of the statute. (*Ibid.*) Where the words of a statute are susceptible of different meanings, we will consider matters such as context, the evils to be remedied, the history of the legislation, any other legislation upon the same subject, and public policy. (*Id.* at p. 376.) The various parts of a statute, or of a statutory scheme, must be harmonized by considering a particular clause or section in the context of the statutory framework as a whole. (*Ibid.*)

#### B. *The Applicable Statutes and Regulations*

Division 3 of title 2 of the Education Code (§ 35000 et seq.) governs the administration of local educational agencies involved in elementary and secondary education. Part 25 of division 3 of title 2 of the Education Code (§ 44000 et seq.) governs "employees" of these local educational agencies. Chapter 4 of part 25 of division 3 of title 2 of the Education Code (§ 44800 et seq.) governs the employment of "certificated" employees by such agencies, including the rights and duties of their certificated employees and the terms of their employment.

■    Broadly collated and summarized, the Education Code divides teachers into four classifications of employees: "permanent" and "probationary" employees are employed for a school year; "temporary" employees are hired as needed during a given semester or school year because a regular employee has been granted a long-term leave of absence or is experiencing a long-term illness; and "substitute" employees, who are employed from day to day to fill the position of a regular employee who is absent from service on a short term basis. At the core of the classification scheme is the tenet that a teacher's continuity of service should restrict a school district's power to terminate employment that it would otherwise ordinarily possess. (*Santa Barbara Federation of Teachers v. Santa Barbara High Sch. Dist.* (1977) 76 Cal.App.3d 223, 228 [142 Cal.Rptr. 749]; *California Teachers Assn. v. Vallejo City Unified School Dist.* (2007) 149 Cal.App.4th 135, 144 [56 Cal.Rptr.3d 712].) More than one published case has described the Education Code sections governing the classification of employees with such terms as "complex and obscure" and internally "conflicting" with each other. (See, e.g., *Santa Barbara Federation of Teachers v. Santa Barbara High Sch. Dist., supra*, at p. 228; *California Teachers Assn. v. Vallejo City Unified School Dist., supra*, at p. 153.) We nonetheless must turn to the sections of the Education Code relevant to this case.[2]

Section 44885.5, subdivision (b), provides that every certificated employee who has completed service as a probationary employee, and who is reelected and employed during the succeeding school year, "shall, upon reelection for the next succeeding school year, *to a position requiring certification qualifications*, be classified as and become a permanent employee of the district. [¶] The governing board shall notify the employee, on or before March 15 of the employee's last complete consecutive school year of probationary employment *in a position requiring certification qualification . . .* , of the decision to reelect or not reelect the employee for the next succeeding school year to this type of position. In the event the governing board does not give notice pursuant to this section on or before March 15, the employee shall be deemed reelected for the next succeeding school year." (Italics added.)

■    Section 44915 provides that the governing board of a school district "shall classify as probationary employees, those persons *employed in positions requiring certification qualifications for the school year*, who have not been classified as permanent employees or as substitute employees." (Italics added.) Although section 44915 sets probationary status as the "default" classification for teachers (*California Teachers Assn. v. Vallejo City Unified School Dist., supra*, 149 Cal.App.4th at p. 143), it does not, as we observed above, and will discuss more fully below, prohibit a school district from classifying an employee as a temporary or as a substitute employee.

---

[2] All further section references are to the Education Code except where otherwise noted.

Section 44916 provides: "The classification [of an employee] shall be made at the time of employment and thereafter in the month of July of each school year. At the time of *initial employment* during *each* academic year, *each new* certificated employee of the school district shall receive a written statement indicating his [or her] employment status and the salary that he [or she] is to be paid. If a school district hires a certificated person as a temporary employee, the written statement [required by this section] shall clearly indicate the temporary nature of the employment and the length of time for which the person is being employed. *If a written statement does not indicate the temporary nature of the employment, the certificated employee shall be deemed to be a probationary employee of the school district, unless employed with permanent status.*" (Italics added.)

Section 44917 provides that the "governing boards of school districts shall classify as substitute employees those persons employed *in positions requiring certification qualifications*, to fill positions of regularly employed persons absent from service." It further provides: "Any person employed for one complete school year as a temporary employee shall, if reemployed for the following school year *in a position requiring certification qualifications*, be classified by the governing board as a probationary employee and the previous year's employment as a temporary employee shall be deemed one year's employment as a probationary employee for purposes of acquiring permanent status." (Italics added.)

Section 44918, subdivision (a), provides: "Any employee classified as a substitute or temporary employee, who serves during one school year for at least 75 percent of the number of days the regular schools of the district were maintained in that school year and *has performed the duties normally required of a certificated employee of the school district*, shall be deemed to have served a complete school year as a probationary employee if employed as a probationary employee for the following school year." (Italics added.)

Section 44919, subdivision (b), provides: "Governing boards shall classify as temporary employees persons, other than substitute employees, *who are employed to serve in a limited assignment supervising athletic activities of pupils*; provided, such assignment shall first be made available to teachers presently employed by the district. *Service pursuant to this subdivision shall not be included in computing the service required as a prerequisite to attainment of, or eligibility to, classification as a permanent employee of a school district.*" (Italics added.)[3]

---

[3] The Department of Education has promulgated California Code of Regulations, title 5, section 5590, subdivision (a), to implement Education Code section 44919, subdivision (b). California Code of Regulations, title 5, section 5590, subdivision (a), defines a "temporary athletic team coach" to mean "a certificated or *noncertificated* employee, other than a

### C. *Analysis*

Neily contends section 44916 imposed a mandatory duty on the District to classify him as a probationary employee, meaning the trial court should have granted his petition for writ of traditional mandate. To reach his desired end point, Neily argues that section 44916 prescribes the "timing and method" that a school district is mandated to follow in order to classify a person as a temporary employee, "along with the consequences for [a] failure to comply." More specifically, Neily argues that, because the District never provided him with a written statement that he was a temporary employee in accord with section 44916, it suffered a mandatory duty to classify him as a probationary employee. We disagree.

As we understand the Education Code's classification scheme, a school district may not classify a person as a temporary employee unless the position in which he or she is employed is "a position the law defines as temporary." (*Bakersfield Elementary Teachers Assn. v. Bakersfield City School Dist.* (2006) 145 Cal.App.4th 1260, 1277 [52 Cal.Rptr.3d 486].) Neily's implicit argument in his current appeal is that there is one exclusive path to defining a position as temporary, namely, a school district must expressly indicate that the position is temporary in a written statement given to an employee in compliance with section 44916. The trial court did not accept Neily's argument, and neither do we.

In our view, there is a second path to defining a position as temporary, namely, a section of the Education Code expressly defines the position as temporary. Unfortunately for Neily, there is a section of the Education Code providing such a definition applicable to his case. Section 44919, subdivision (b), expressly and unambiguously provides that a school district "shall classify as temporary employees persons . . . *who are employed to serve in a limited assignment supervising athletic activities of pupils.*" (Italics added.) Because there is no evidence in the record to dispute that the District employed Neily to serve in a limited assignment supervising athletic activities of pupils, Neily is incorrect that the District had a duty mandated by law to classify him as a probationary employee. To the extent Neily argues he performed the duties of a certificated teacher within his role as baseball coach, we simply do not see evidence in the record supporting his position. In short, we find that the more specific provision in section 44919, subdivision (b), controls over the more generally applicable provisions found in section 44916, given the facts in Neily's current case. California Code of

---

substitute employee, hired to supervise or instruct interscholastic athletic activities as a temporary employee in a limited assignment capacity. *The term is applicable to a certificated employee who supervises or instructs interscholastic athletic activities in addition to his or her regular assignment.*" (Italics added.)

Regulations, title 5, section 5590, subdivision (a), allows such a conclusion in providing that the term "temporary athletic team coach" is *applicable to a certificated employee who supervises or instructs interscholastic athletic activities in addition to his or her regular assignment.*" (Italics added.)

Our confidence in this "plain language" construction of the statutes is reinforced by the legislative history of section 44919, subdivision (b). In *California Teachers Assn. v. Governing Bd. of Rialto Unified School Dist.* (1997) 14 Cal.4th 627, 645–648 [59 Cal.Rptr.2d 671,. 927 P.2d 1175], the Supreme Court explained that section 44919, subdivision (b), was enacted in 1977, in an era of growing popularity of new athletics such as soccer and girls' sports. And, because these new sports needed coaches that might come from outside the existing pool of school employees, there was a concern with the prospect of "temporary" employees, i.e., coaches, gaining probationary status based upon their service as coaches. To address that situation, the Legislature enacted section 44919, subdivision (b), to give school districts "more flexibility" when hiring coaches, without the problems that could arise in the event those coaches were classified as probationary employees, with potential rights to reemployment in positions that would not always be available the next school year. (*Ibid.*)

We also note that the myriad sections of the Education Code concerning situations when an employee's classifications will be "deemed" to have been transmuted from one classification to another (see, e.g., §§ 44885.5, 44917, 44918), all include language indicating that they apply when employees are employed in positions requiring "certification qualifications." This makes sense given the overriding principle that the classification system's goal is to protect teachers based on their continuity of service in the classroom. Because coaching positions may be filled by certificated or noncertificated employees, these sections are inapplicable to athletic team coach positions, and by inference, support the conclusion that a coaching position is not in the same field of play.

That brings us to *Kavanaugh, supra,* 29 Cal.4th 911. *Kavanaugh,* as does Neily's case, involved a dispute over whether an employee was a temporary or a probationary employee. The school district hired Kavanaugh to teach high school English for a full academic year, and may or may not have *spoken* to her that she would be classified as a temporary employee. Kavanaugh later filed a petition for writ of traditional mandate alleging that the district had a mandatory duty to classify her as a probationary employee pursuant to section 44916, because it had not provided her with a *written statement* that she was to be classified as a temporary employee. The trial court granted the petition, the Court of Appeal reversed, and the Supreme Court reversed the Court of Appeal. The Supreme Court's opinion confirmed

that unless a certificated employee receives written statement of his or her classification prior to the start of the school year, he or she shall be deemed classified as a probationary employee. (*Kavanaugh, supra,* at pp. 916–926.)

Neily argues that, because the District did not deliver written notification to him that he was a temporary employee each of the five years he served as an athletic coach, the law commands that he be classified as a probationary employee under section 44916, and in accord with *Kavanaugh.* For the reasons explained above, we do not agree. And we disagree with Neily that we are bound by *Kavanaugh* to rule in his favor. As the trial court noted, Neilly's case is not materially different from *Kavanaugh,* except that the teacher in *Kavanaugh* was employed to teach English whereas Neily was employed as a coach. The difference is one that results in a different result in Neily's case.

Section 44919, subdivision (b), is embedded in a series of sections governing the classification of employees as temporary, substitute or probationary employees, each of which, as noted above, refers to employment in positions requiring certification qualifications. Section 44919, subdivision (b), however, allows that an athletic coach does not require certification. The statutes thus inherently recognize that coaches stand in a position different than certificated employees in the classroom. This further suggests, in our view, that section 44916's written notice requirement does not apply in the coaching context. A person who is certificated by the California Commission on Teacher Credentialing, but who accepts a position which is defined as a temporary position, is not afforded the same job protections as a probationary employee simply by virtue of his or her certification.

Finally, we reject Neily's argument that the District employed him as a "certificated employee with teaching responsibilities," i.e., in a position requiring certification qualifications. The only evidence in the record supporting Neily's argument regarding "teaching responsibilities" is found in his verified petition in which he states that he was relieved of his duties as a full-time teacher at MCHS in June 2004, but remained as the high school's head varsity baseball coach, "with sixth period teaching responsibilities." In denying Neily's petition, the trial court implicitly rejected this vague assertion. The trial court's finding makes sense because the evidence in the record otherwise overwhelmingly shows that Neily's sole duties after 2004 were in the role of a baseball coach. Although the District's use of the term "walk-on coach" is itself a meaningless term, the evidence established that Neily's responsibilities were as a "temporary athletic team coach," and not a teacher in a position requiring certification.

■ Because substantial evidence supports the conclusion that the District employed Neily as a "temporary athletic team coach" at the time of his termination in June 2009, he was not entitled to the specified protections afforded under the Education Code to a "probationary" certificated teacher.

## II. The Notice of Termination Was Timely

■ Section 44954, subdivision (b), required the District to give Neily notice of termination as a temporary employee "before the end of the school year." Neily contends the judgment must be reversed because, even in the event he was a temporary employee, the District's notice of termination was untimely. More specifically, Neily argues the end of the school year at MCHS was June 18, 2009, the last day students were in session, and that the District did not provide him with notice of termination until June 22, 2009. We see no error.

Neily correctly cites the time requirement for notice of termination pre-scribed by section 44954, subdivision (b), but his abstractly correct rule does not mean that his argument prevails. Section 37200 defines a "school year" as beginning on July 1 and ending on June 30. A school year does not end on the last day that students and teachers are in their classrooms, it ends on June 30. Inasmuch as Neily acknowledges that he received notice of termination on June 22, 2009, the District did not violate the time requirement prescribed by section 44954, subdivision (b).

Neily's reliance on *McKee v. Commission on Professional Competence* (1981) 114 Cal.App.3d 718 [171 Cal.Rptr. 81], in support of his alternative definition of the "end of the school year" is misplaced. In *McKee*, "[t]he sole issue of import" before Division Four of our court was the interpretation of former section 44938 dealing with disciplinary matters. Former section 44938 required a school district to notify a teacher " 'during the preceding term or half school year' " of his or her unprofessional conduct or incompetency in order to allow the teacher time to " 'correct his [or her] faults and overcome the grounds for such charge.' " (*McKee*, at p. 721.) In the context of a possible discipline charge, and the grant of an opportunity to correct faults, Division Four ruled that the "half school year" warning time only made sense in relationship to an "academic school year," not a "fiscal school year." In our view, *McKee* is limited to its context, and has no application where a decision to terminate employment does not involve potential charges and granting an employee an opportunity for correcting his or her faults. We see no reason not to apply section 37200 in the context of Neily's case.

## DISPOSITION

The judgment is affirmed. Each party to bear their own costs on appeal.

Rubin, J., and Flier, J., concurred.